UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

XTO ENERGY, INC.,

    Plaintiff,

vs.                                         Case No. 15 CV 1180 JAP/KK

JOHN L. FURTH, KENNETH P. LABAN,
and HENRY A. PERLES, as Co-Trustees
for THE TRUST U/W ANNE BAXTER
KLEE F/B/O KATRINA HODIAK; THE
TRUST U/W ANNE BAXTER KLEE
F/B/O MELISSA GALT; and THE
TRUST U/W ANNE BAXTER KLEE
F/B/O MAGINAL GALT,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This case concerns a claim for unjust enrichment based on overpayment of an oil and gas interest. Plaintiff XTO Energy (Plaintiff or XTO) asks the Court to order restitution of the overpayments it made to Defendants John L. Furth, Kenneth P. Laban, and Henry A. Perles (collectively, Defendants or Trustees) as co-trustees of three testamentary trusts that held an interest in a federal oil and gas lease assigned to Plaintiff.[1] Both parties have moved for summary judgment, and those motions have been fully briefed.[2]

On November 15, 2017, the Court held a hearing on the cross motions for summary judgment. Plaintiff was represented by attorneys John Anderson and Julia Broggi, and Defendants were represented by attorney Eugene Gallegos. Based on the briefing and on the oral

---

[1] *See* SECOND AMENDED COMPLAINT FOR UNJUST ENRICHMENT (Doc. No. 48).
[2] *See* DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING AUTHORITIES (Doc. No. 38); XTO ENERGY INC.'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 49); DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 53); XTO ENERGY INC.'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 58); DEFENDANTS' ANSWER BRIEF IN OPPOSITION TO XTO'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 60); XTO ENERGY INC.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (Doc. No. 62).

arguments, the Court concludes that the facts are largely undisputed and that Plaintiff's claim is not barred as a matter of law. However, the Court finds that Plaintiff has not shown that it is entitled to equitable relief at the summary judgment stage. Accordingly, the Court will deny both motions.

## I. BACKGROUND[3]

In 1964, D. Klee acquired a federal oil and gas lease for 920 acres of land in Eddy County, New Mexico. Klee assigned his lease to Jack Russell ten years later, but in the assignment Klee reserved for himself a production payment interest of $1000 per acre for a total of $920,000. This production payment was to be paid out of 5% of the market value of all the oil and gas produced. When Klee died, the production interest became the property of his wife, Anne Baxter Klee. Upon her death in 1985 the production interest passed through her will to three testamentary trusts established for the benefit of her three daughters: Katrina Hodiak, Melissa Galt, and Maginal Galt. Defendants were appointed by the will as co-trustees of each of these three trusts. But the trustees did not possess a copy of the lease or the assignment from Klee to Russell, and they were not aware of the details of the production interest or its payout limit of $920,000.

The federal lease passed from Russell to various other lessees, eventually being acquired by Strata Production Company. Strata contacted Defendants in 2002, advised them of the production interest, and began making payments to the trusts. Plaintiff asserts that Strata paid the trusts a total of $468,643.44. Defendants do not deny that Strata made payments on the interest, but they dispute the amount alleged by Plaintiff and argue that the precise amount paid by Strata has not been established by competent evidence.

---

[3] The following facts are undisputed unless otherwise noted.

In October 2006, Plaintiff XTO acquired Strata's interest in the federal lease and assumed responsibility for making the production payments. Plaintiff is a large energy company that was founded in Fort Worth in 1986, holds interests in approximately 40,000 producing oil and gas wells nationwide, and merged with Exxon Mobil Corporation in 2010. Setting up payments made on production interests so that they can be tracked is common practice in the oil and gas industry. Nevertheless, Plaintiff neglected to properly set up the production payment interest in its accounting system. Plaintiff made the production payments but did not subtract the amounts paid from its total payout obligation. At least some XTO employees were aware by the end of May, 2007, that the payments might not have been set up to be tracked by accounting. In 2010, an XTO employee specifically contacted the accounting department in an attempt to get information on whether the payments were being tracked. The employee noted that the production interest would terminate when the total amount had been paid, but he was unable to get any information as to the status of the payment obligation.

It was not until December of 2014 or January of 2015 that Plaintiff realized that payout had been reached and stopped making payments to the trusts. By then, the trusts had been overpaid. Plaintiff paid $1,938,184.37 to the three trusts, which were entitled to receive only $920,000.00. Plaintiff maintains that this resulted in an overpayment of $1,486,827.80 when the $468,643.44 previously paid to Defendants by Strata is deducted from the $920,000.00 owed on Defendants' interest. Plaintiff brought a claim for unjust enrichment and now asks for summary judgment ordering restitution of its alleged $1,486,827.80 overpayment.[4]

Defendants do not contest the amount paid by Plaintiff, nor do they dispute the fact that they were overpaid. However, Defendants do not agree on the amount of the overpayment

---

[4] Plaintiff's original Complaint also included a claim for breach of the duty of good faith and fair dealing, which Defendants address in their motion. Because Plaintiff dropped this claim in its Second Amended Complaint the Court will discuss only the remaining claim for unjust enrichment.

3

because they dispute Plaintiff's right to subtract payments made by Strata from the amount owed to Defendants, and they contend that the amount of Strata's payments has not been established by competent evidence. Further, Defendants do not agree that restitution is warranted at all. Defendants assert that the equitable remedy of restitution is not available to Plaintiff because the overpayment was due to Plaintiff's own negligence. Defendants argue that this completely bars Plaintiff's claim, and they ask the Court to enter summary judgment in their favor.

## II. LEGAL STANDARD

The Court has jurisdiction over this matter under 28 U.S.C. § 1332 due to the diverse citizenship of the parties and the $1,486,827.80 in controversy. In a diversity action, the Court will apply federal procedural law and the substantive law of the forum state—here New Mexico, where the oil and gas leases are located. *Jones v. United Parcel Service, Inc.*, 674 F.3d 1187, 1195 (10th Cir. 2012). Summary judgment may be granted if the moving party shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, [the Court] view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (internal quotation marks omitted). On cross-motions for summary judgment the Court is entitled "to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000). The Court will analyze each motion individually and on its own merits. *See Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) (explaining that "[c]ross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

### III. DISCUSSION

To prevail on its claim for unjust enrichment Plaintiff must prove that Defendants were knowingly benefitted at Plaintiff's expense and that it would be unjust for Defendants to retain the benefit. *City of Rio Rancho v. Amrep Southwest Inc.*, 2011-NMSC-037, ¶ 54, 150 N.M. 428, 260 P.3d 414. "A person who receives any sort of advantage, such as possession of or some other interest in money, has been conferred a benefit." *Sunwest Bank of Albuquerque v. Colucci*, 1994-NMSC-027, ¶ 10, 117 N.M. 373, 872 P.2d 346. "A person who receives a benefit has been enriched." *Id.* The parties agree that Plaintiff overpaid Defendants, but do not agree on the amount of the overpayment.

Plaintiff asserts that when it acquired the lease, Strata had already paid Defendants a total of $468,643.44, leaving only $451,356.56 owed by Plaintiff on Defendants' interest. Plaintiff therefore claims that its payment of $1,938,184.37 to the three trusts resulted in an overpayment of $1,486,827.80. Defendants argue first that Plaintiff is not entitled to benefit from payments made by Strata. However, Defendants' interest was limited to payment of $920,000.00, and if Strata paid a portion of this amount when it was in possession of the lease, those payments would reduce the remaining amount owed. Defendants present no legal argument to the contrary.

Defendants next contend that Plaintiff has not presented competent evidence of the amount paid by Strata. Plaintiff supports its claim with an affidavit from Mitch Krakauskas, the Land Manager for Strata since 2009. Mr. Krakauskas averred that, although he did not work for Strata at the time Plaintiff acquired the lease, he had reviewed Strata's business records, was familiar with the payment history on Defendants' interest, and knew that Strata had paid Defendants a total of $468,643.44. *See* Doc. No. 58-2, Ex. B, Affidavit of Mitch Krakauskas. Mr. Krakauskas attached to his affidavit two documents provided to Plaintiff by Strata, one of

which lists the total amount of Defendants' interest as $920,000.00 but shows nothing having been paid, and another that lists total amounts in three columns labeled "gross revenue," "taxes," and "net revenue." The total taxes and net revenue add up to the total gross revenue, which is listed as $468,643.44, equivalent to the amount of payment stated by Mr. Krakauskas. Below that total is the original payment amount of $920,000.00 and a remaining balance on payout of $451,356.56, which seems to reflect the original obligation minus the gross revenue.

Defendants have not formally moved to strike Mr. Krakauskas' affidavit, but they argue in their response to Plaintiff's motion for summary judgment that Mr. Krakauskas' affidavit should be stricken for lack of personal knowledge and because it is based on a summary exhibit. However, Mr. Krakauskas' affidavit is based on his personal review of Strata's business records in his position as Land Manager, and as such the Court concludes that it is based on personal knowledge. *See Bryant v. Farmers Ins. Exchange*, 432 F.3d 1114, 1123–24 (10th Cir. 2005) (affidavit premised on review of records was based on personal knowledge). Additionally, the documents attached are not summary exhibits within the meaning of Federal Rule of Evidence 1006 because they were previously created by Strata unrelated to this litigation, not as a means to summarize other evidence in this case. They are business records regularly kept by Strata, and as such are admissible under Federal Rule of Evidence 803(6). Accordingly, Mr. Krakauskas' affidavit constitutes competent evidence that Strata paid $468,643.44 on Defendants' interest. Because Defendants present no contrary evidence, the Court concludes that this fact is undisputed for the purpose of these motions.

Defendants have therefore been enriched at Plaintiff's expense in the amount of $1,486,827.80. However, Defendants contend that they were not "knowingly benefitted" because they were not aware they were being overpaid at the time they received the money. This

argument is unavailing, since all that is required is knowledge of the benefit, in the form of the money received, not knowledge that Defendants were not entitled to the money. *See Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 20, 129 N.M. 200, 3 P.3d 695 (knowledge that subcontractor's work had added value to home sufficient to show owner's knowledge of benefit, even though it was bankruptcy of general contractor, not action of homeowner, that caused subcontractor not to be paid for labor and materials).

Defendants next raise their main contention—that their retention of the benefit is not unjust. "There is no question that 'a person who has been unjustly enriched at the expense of another is required to make restitution to the other.'" *Id.* ¶ 9 (quoting Restatement of Restitution § 1 (1937)). Under New Mexico law,

> [a] person receiving a benefit has been unjustly enriched if retention of the benefit would be unjust. Restatement of Restitution § 1 cmt. a. It is often considered unjust to retain a benefit where there has been a mistake in conferring the benefit. *See id.* §§ 15 to 55 (stating conditions under which there is right to restitution because of mistake in conferring a benefit). For example, "Where a plaintiff has paid money in the mistaken belief that an enforceable contract exists, the plaintiff is entitled to recover the money paid, as restitution." *Reynolds v. Slaughter*, 541 F.2d 254, 256 (10th Cir. 1976) (applying New Mexico law); *see also* Restatement of Restitution § 15 (person is entitled to recover money paid another pursuant to supposed contract person erroneously believed to exist); *Rabbit Ear Cattle Co. v. Frieze*, 80 N.M. 203, 204, 453 P.2d 373, 374 (1969) ("The general rule is that payments made as a result of a material mistake of fact are regarded as involuntary and are recoverable.").

*Id.* ¶ 12.

Defendants acknowledge that a mistaken overpayment must be refunded, but attempt to distinguish Plaintiff's negligence from mere error by characterizing it as a willful failure to account for the money Plaintiff was paying to Defendants despite Plaintiff's knowledge of its limited payment obligation. According to Defendants, XTO's admitted negligence, in failing to

7

follow standard industry practices by tracking the payments Plaintiff made on Defendants' interest, disqualifies Plaintiff from equitable relief.

In support of this position, Defendants rely primarily on *United Properties Ltd. v. Walgreen Properties*, 2003-NMCA-140, 134 N.M. 725, 82 P.3d 535, a case from the New Mexico Court of Appeals. Defendants argue that *United Properties* prohibits equitable relief when the circumstances necessitating the remedy were created by the plaintiff's own negligence. In *United Properties*, a lessee sued to extend a lease when the lessor had declined to accept the lessee's untimely notice of renewal and had instead asked the lessee to vacate the premises. *Id.* ¶¶ 4–5. The contract between the parties required the lessee to submit written notice of its intent to renew the five-year lease no later than three months before the expiration of the current term. *Id.* ¶ 2. Unfortunately, the lessee forgot and did not submit its notice for over a month past the due date. The lessee sent its notice only after receiving the lessor's communication stating that the deadline for giving notice of renewal had passed. *Id.* ¶ 4. The lessee tried to renew the lease when it realized its error, but when its offer was declined it filed suit asking the court to grant equitable relief extending its lease for another five years. *Id.* ¶¶ 4–5. The New Mexico Court of Appeals held that the unambiguous terms of the option contract must be enforced, reasoning that allowing the equitable relief requested would result in commercial instability due to judicial rewriting of freely-bargained-for terms. *Id.* ¶¶ 12, 31–32. Its analysis distinguished mistake, "one of the traditional exceptions that would allow equity to intervene," from negligence in the failure to fulfill a contractual duty. *Id.* ¶¶ 29–30.

In the second case Defendants rely on, the New Mexico Court of Appeals similarly held that a stipulated judgment could not be set aside due to a debtor's negligence. *See Builders Contract Interiors v. Hi-Lo Indus.*, 2006-NMCA-053, ¶ 1, 139 N.M. 508, 134 P.3d 796. The

parties had settled a dispute by an agreement that the debtor would pay a specified amount by a certain date. *Id.* ¶ 3. The settlement agreement entitled the creditor to file a stipulated judgment for a larger amount if the debtor failed to meet the deadline. *Id.* Four days after the date passed without payment, the creditor filed the stipulated judgment. *Id.* The debtor attempted to make its payment for the original settlement amount three days after the judgment was entered, but the creditor declined to accept the debtor's check. *Id.* The debtor then filed suit, asking for equitable relief on the ground that it had been mistaken about the due date. *Id.* ¶¶ 4, 6. But the Court of Appeals concluded that the terms of the settlement agreement were clear, the contract must be enforced, and equity could not relieve a party from its negligent failure to comply with the terms of its bargain. *Id.* ¶ 11. It relied on *United Properties* to distinguish negligence from mistake. *Id.*

At the November 15, 2017 hearing, Defendants cited a third New Mexico case containing a similar statement:[5]

> where [a] mistake of fact is attributable to a party's own negligence in failing to exercise reasonable diligence in ascertaining the true facts and he had available the opportunity to ascertain the truth, equity will not grant relief.

*Albuquerque Nat'l Bank v. Albuquerque Ranch Estates, Inc.*, 1982-NMSC-142, ¶ 27, 99 N.M. 95, 654 P.2d 548, *overruled on other grounds by J.R. Hale Contracting Co., Inc. v. United N.M. Bank at Albuquerque*, 1990-NMSC-089, ¶ 12 n.1, 110 N.M. 712, 799 P.2d 581. In *Albuquerque National Bank*, the New Mexico Supreme Court declined to set aside the forfeiture of property under a real estate contract after the purchasers failed to make the required timely payments. *Id.* ¶¶ 1–5, 14. The terms of the contract specified that the failure to meet any of the payment due dates constituted a default. *Id.* ¶ 5. If the default continued for ninety days after a written demand for payment, the owner would be entitled either to declare the unpaid balance due immediately or

---

[5] Plaintiff objected to discussion of this case at the hearing because it had not been previously cited in the briefs. The Court finds the case distinguishable so will not address whether Defendants' reliance on it was proper.

to terminate the contract and retain as rent any payments that had been made. *Id.* The purchasers raised multiple equitable defenses, including mistake of fact and unjust enrichment. *Id.* ¶ 19. But the New Mexico Supreme Court affirmed the trial court's rejection of these defenses because the purchasers had failed to make timely payments and had not cured the default within the ninety days they were given to do so despite having received the demand for payment. *Id.* ¶¶ 20, 31. "Although equity abhors forfeitures," the purchasers did not prevail on the claim for unjust enrichment because they failed to comply with the fair and unambiguous terms of the contract. *Id.* ¶¶ 30, 55.

Defendants assert that *United Properties*, *Builders Contract Interiors*, and *Albuquerque National Bank* prevent this Court from granting equitable relief when the overpayments were the result of Plaintiff's negligence. But those cases all involved a request for equitable relief from the terms of an unambiguous and freely-entered contract when the party had failed to fulfill its specified duties yet was attempting to avoid the contractual penalty. Under New Mexico law, "claims for unjust enrichment are disfavored where the parties have a valid, enforceable contract." *Brutsche v. Lieberman*, Bankruptcy No. 11–13326–j7, 2013 WL 501666, *4 (Bankr. D.N.M. 2013) (unpublished). But that is not the situation here, and the Court therefore finds these cases distinguishable. While Plaintiff was bound by its lease assignment to pay Defendants' production interest, it is undisputed that Plaintiff made the required payments, so Plaintiff did not fail to perform a contractual duty.

The overpayments here are much more analogous to the facts of *Sunwest Bank*, 1994-NMSC-027, the primary case relied on by Plaintiff. The defendant in *Sunwest Bank* had a joint account with his wife at the plaintiff bank, and he was also a payable-on-death (P.O.D.) beneficiary to another joint account there that belonged to his wife and a third party. *Id.* ¶¶ 3–4.

After his wife died, the defendant called the bank and was told that the money in the joint account his wife had held with the third party did not belong to him. *Id.* ¶ 4. Nevertheless, he went to the bank and talked with an employee about withdrawing the funds. *Id.* The employee looked up the account but mistakenly reviewed the information pertaining to the other joint account, saw the defendant listed as an owner, and issued the defendant a cashier's check for the balance. *Id.* The bank filed a complaint for unjust enrichment, asking that the defendant be ordered to return the money. *Id.* ¶ 5. The defendant argued that the bank was not entitled to restitution because its negligence had caused the error. *Id.* ¶ 6. But the New Mexico Supreme Court rejected this argument and affirmed the award of restitution:

> "A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care." Restatement of Restitution § 59. This is so because one is not penalized for lack of care unless it results in harm to someone else. *Id.* § 59 cmt. a. Although the Bank may have been negligent in disbursing the funds to Colucci, its negligence caused no harm to anyone except itself and Ms. Rutter—certainly not to Colucci. Colucci thus benefitted at the Bank's expense and must make restitution. *See Naugle v. O'Connell*, 833 F.2d 1391, 1398 (10th Cir. 1987) ("'[R]estitution, based on mistake of fact, will not be denied because of forgetfulness of once known facts or negligent failure to ascertain the true facts.'") (quoting *Sawyer v. Mid–Continent Petroleum Corp.*, 236 F.2d 518, 521 (10th Cir. 1956) (applying New Mexico law)).

*Sunwest Bank*, 1994-NMSC-027, ¶ 15. Defendants respond that *Sunwest Bank* is not controlling because that defendant wrongfully caused the payment by requesting the funds, knowing that he was not entitled to the money. But that was not the basis for the New Mexico Supreme Court's holding. An unjust enrichment claim requires that retention of the benefit would be unjust, but not that the original acquisition of the benefit was wrongfully caused by the defendant. *See Ontiveros Insulation*, 2000-NMCA-051, ¶ 20 (homeowners were liable to subcontractor for restitution when general contractor

11

failed to pay for labor and materials). The Court will reject Defendants' attempt to limit the Court's equitable powers due to Plaintiff's negligence.

Finally, Defendants maintain that Plaintiff's lack of care in spite of repeated warnings from its own employees renders its overpayments voluntary and bars its claim for restitution. "[P]ayments voluntarily made with full knowledge of all material facts cannot be recovered back in absence of fraud or duress." *Rabbit Ears Cattle Co. v. Frieze*, 1969-NMSC-043, ¶ 5, 80 N.M. 203, 453 P.2d 373. However, "[t]he general rule is that payments made as a result of a material mistake of fact are regarded as involuntary and are recoverable." *Id.* "Mistake of fact is frequently founded in 'unconscious ignorance' or forgetfulness of facts which could have been remedied by the exercise of due care." *Id.* Plaintiff admits its negligence and acknowledges that it could have discovered the amount remaining due on Defendants' interest and avoided the overpayments if it had exercised due care. But Plaintiff did not make the overpayments while knowing that its obligation had already been fulfilled. "For [the voluntary payment rule] to apply, however, the overpayments must have been truly voluntary, that is, done by design or intentionally or purposely or by choice or of one's own accord or by the free exercise of the will." *Gulf Oil Corp. v. Lone Star Producing Co.*, 322 F.2d 28, 31 (5th Cir. 1963) (internal quotation marks omitted) (applying Texas law). "There must appear an intention on the part of the payor to waive his rights." *Id.* (internal quotation marks omitted). The Court concludes that Plaintiff did not voluntarily overpay Defendants and that Plaintiff's claim for unjust enrichment is not barred. Accordingly, the Court will deny Defendants' motion.

Since its claim is not barred as a matter of law, Plaintiff contends that it is entitled to summary judgment ordering restitution because it is undisputed that Plaintiff overpaid Defendants. An undeserved benefit conferred by mistake is often subject to restitution, *Sunwest*

12

*Bank*, 1994-NMSC-027, ¶ 12, but this result is not automatic. *See City of Carlsbad v. Grace*, 1998-NMCA-144, ¶¶ 26–27 (remanding because trial court did not weigh the equities in an oil and gas royalty recoupment case).

> If the lessee or the purchaser of royalty oil or royalty gas should overpay a lessor or should make payment to a person not entitled to receive such payment, such lessee or purchaser may or may not be entitled to a refund of the amount erroneously paid, depending upon the circumstances of the payment.

*Id.* ¶ 26 (quoting 3 Eugene Kuntz, A Treatise on the Law of Oil and Gas (A Revision of Thornton) § 42.8, at 444 (1989)). Unjust enrichment is an equitable claim, and the Court must balance the equities between the parties to determine whether retention of a benefit is unjust. *City of Rio Rancho*, 2011-NMSC-037, ¶ 55.

It is undisputed that Defendants were not entitled to receipt of the money paid to them by Plaintiff after the amount of Plaintiff's payout obligation had been reached. But Defendants argue that even so, equity favors allowing them to retain the money. Defendants first assert that fault lies with Plaintiff. Defendants note that Plaintiff is a large energy company with experience in limited production interests; that Plaintiff was aware of the limits on its obligation to pay Defendants; that Plaintiff ignored efforts by its own employees to investigate the status of its obligation; and that Plaintiff was solely responsible for the overpayment. Defendants did not instigate the overpayments, but merely accepted the money that was given to them. Defendants did not know that they were receiving more money than they should because they were not aware of the limits on their interest. This is unlike the defendant in *Sunwest Bank*, who deliberately requested the balance of an account to which he knew he was not entitled.

Additionally, Defendants assert that the potential consequences of the judgment favor denying restitution. They argue that because Plaintiff is part of ExxonMobil, the largest publicly traded international oil and gas company in the world, Plaintiff's financial resources would

13

enable Plaintiff to easily absorb the monetary loss of the overpayments without impact to Plaintiff's business operations. Defendants, by contrast, would be financially devastated if required to comply with an order of restitution. In 2015, the year this suit was filed, Plaintiff generated hundreds of millions of dollars in gross revenue from its New Mexico operations alone. Defendants, on the other hand, distributed the overpayments they received as trust income believing they were entitled to the money, and they do not now hold any of the funds paid by Plaintiff in the trust assets. As of November 21, 2017, the total assets of the three trusts were: Katrina Hodiak trust, $4.21; Maginel Galt trust, $627,701.28; Melissa Galt trust, $441,236.00. Assuming that these balances were unchanged at the time of judgment, two of the trusts would not possess sufficient assets to cover $495,609.27, or one third of the full amount of $1,486,827.80 that Plaintiff requests. Those two trusts would have their assets completely eliminated, while the third trust would be reduced drastically from $627,701.28 to $132,092.01. Accordingly, Defendants would be severely impacted by an order of restitution.

Plaintiff does not take issue with these facts except to argue that Defendants knew or should have known the limits of their production interest. Plaintiff refers to the overpayments as a "windfall" and points out that Defendants are "well-educated and sophisticated trustees of three testamentary trusts" who were selected based on their professional experience and that Defendants have acknowledged "that it is important for trustees to understand the value of trust assets." But Plaintiff presents no evidence that Defendants were actually aware of the limits of their interest, and it makes no other argument as to why the equities favor an order of restitution in this case.

Plaintiff relies on several cases that approved the recoupment of excessive royalties paid by mistake through the withholding of future royalties that would otherwise be due. *See, e.g.*,

14

*City of Carlsbad*, 1998-NMCA-144, ¶¶ 25–27 (approving of equitable recoupment as a remedy for overpaid royalties but remanding for balancing of equities). Plaintiff argues that these cases support the proposition that an energy company may recover such overpayments, but Plaintiff admits that they are not dispositive of its claim because recoupment is not the remedy it seeks. Nor would they necessarily define the equities of this case. In recoupment, current assets of the defendant are not reduced because all recovery is withheld from future payments. But recoupment is not possible in a case like this where no future payments are due.

An award of restitution of $1,486,827.80, the amount requested by Plaintiff, would be greater than the $1,068,941.49 total assets, as of November 21 2017, of the three trusts combined. "New Mexico courts recognize that restitution is an equitable remedy, and often look to the Restatements for guidance in considering restitution claims." *Abraham v. WPX Energy Production, LLC*, 20 F. Supp. 3d 1244, 1277 (D.N.M. 2014) (internal quotation marks omitted). Merely having spent the money is not generally a defense to a claim for restitution. *See* Restatement (Third) of Restitution and Unjust Enrichment, § 65 cmt. c. However, it may be taken into consideration when the expenditure which resulted in the inability to return the funds was caused by their receipt and would not otherwise have been made. *Id.* Here, the trusts no longer hold the overpayment in their assets because it was distributed to the trust beneficiaries as income. While the amount of restitution is generally measured by the benefit obtained by a defendant, an award may be reduced when the benefit has been consumed and is no longer reflected in assets. *Romero v. Bank of the Southwest*, 2003-NMCA-124, ¶¶ 31–32, 135 N.M. 1, 83 P.3d 288.

At the hearing, counsel for Defendants represented that the trust beneficiaries are elderly women who rely on the trust funds for financial support, including payment of the cost of

15

medical care. Plaintiff responded that the financial status of the parties and the effects of a monetary award on the parties or the beneficiaries were not proper considerations. But in balancing the equities, the Court considers "the dollar amounts involved and their practical consequences to the parties." *Id.* ¶ 27. This includes the impact of any grant or denial of restitution. The Court may also consider other equitable factors, such as Plaintiff's accounting procedures and the parties' diligence in discovering the overpayment. *Id.* The Court concludes that although Plaintiff has a valid claim for restitution, denial of the award or reduction of the amount may be appropriate in this case on equitable grounds. Plaintiff has not presented evidence sufficient to entitle it to summary judgment on the Court's balancing of the equities, and accordingly the Court will deny Plaintiff's motion.

IT IS THEREFORE ORDERED that:

(1) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SUPPORTING AUTHORITIES (Doc. No. 38) is DENIED; and

(2) XTO ENERGY INC.'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 58) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE